**GUEST MANSIONS, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**ARAPAHOE COUNTY BOARD OF EQUALIZATION; John Nicholl, Thomas R. Eggert, Jeannie Jolly, in their official capacity as members of the Arapahoe County Board of Equalization; Joseph R. Marceny, in his official capacity as the Arapahoe County Assessor, Defendants–Appellees.**

No. 93CA1094.

Colorado Court of Appeals, Div. II.

Jan. 12, 1995.

Rehearing Denied Feb. 9, 1995.

Certiorari Denied Aug. 14, 1995.

Holland & Hart, Alan Poe, Mary D. Metzger, Denver, for plaintiff-appellant.

Peter Lawrence Vana III, Arapahoe County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, for defendants-appellees.

Opinion by Judge ROY.

Guest Mansions, Inc., appeals from a judgment of the district court holding that its leasehold interest in property owned by the Arapahoe County Public Airport Authority (Authority) is taxable for tax year 1990. We affirm.

Guest Mansions leases a hotel and associated real property located within the boundaries of Centennial Airport from the Authority which was created, and is operating, pursuant to the Public Airport Authority Act, § 41–3–101, et seq., C.R.S. (1993 Repl.Vol. 17). The lease dated March 24, 1983, was amended and restated October 26, 1984, and is for a term of fifty years with an option to renew for an additional 15 years.

The taxation of this leasehold, or possessory, interest was previously disputed with respect to tax year 1988. In that proceeding, the Arapahoe County Board of Equalization (CBOE) determined that the property was exempt from taxation. Upon review of the County's abstract of assessment, the State Board of Equalization (SBOE) reached a contrary result. Guest Mansions appealed that determination to the district court which held that the SBOE lacked jurisdiction. A division of this court affirmed. *Guest Mansions, Inc. v. Colorado State Board of Equalization,* (Colo.App. No. 89CA2023, January 24, 1991) (not selected for official publication).

In May 1990, the Assessor again assessed the leasehold, or possessory, interest of Guest Mansions as lessee of the hotel and associated real property. Guest Mansions protested and appealed the Assessor's denial of the protest to the CBOE which, this time around, agreed with the Assessor.

Guest Mansions then sought a *de novo* review in the district court arguing that the Assessor should be collaterally estopped from taking a position contrary to the final resolution of the issues with respect to the 1988 tax year. Guest Mansions further argued that, in the interim, neither the law nor the facts that formed the basis of the decision with respect to the 1988 decision had changed.

The district court upheld the decision of the Assessor and CBOE and held that the possessory interest of Guest Mansions in the hotel and associated real property was taxable.

## I.

The fundamental issue on appeal is whether Guest Mansions, as the lessee of the hotel and associated real property, is subject to property taxation pursuant to § 39–3–135, C.R.S. (1994 Repl.Vol. 16B), known as the "Possessory Interest Statute." This statute provides that whenever real property that is otherwise exempt from property tax is "leased ... to and used by a ... corporation in connection with a business conducted for profit, the lessee or user of such real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property...." Section 39–3–135(1), C.R.S. (1994 Repl.Vol. 16B). An exception to this general rule preserves the exemption for such real property when the use "is the result of a lease or concession within the boundaries of a public airport and is directly related to the ordinary function of the airport." Section 39–3–135(4)(c), C.R.S. (1994 Repl.Vol. 16B). The method of valuation was not an issue below and is not before us.

## II.

█ Guest Mansions first contends that the Assessor is collaterally estopped from challenging the tax exempt status of the property. We disagree.

Collateral estoppel may be generally invoked if:

1) the issue precluded is identical to an issue actually determined in the prior proceeding; and

2) the party against whom estoppel is asserted has been a party to or in privity with a party in the prior proceeding; and

3) there is a final judgment on the merits in the prior proceeding; and

4) the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue in the prior proceeding.

*Maryland Casualty Co. v. Messina,* 874 P.2d 1058, 1061 (Colo.1994).

Collateral estoppel has been applied to bind the parties to an administrative proceeding. In *Industrial Commission v. Moffat County School District RE No. 1*, 732 P.2d 616, 620 (Colo.1987), our supreme court stated:

The doctrines of res judicata and collateral estoppel were developed in the context of judicial proceedings, but may be applied to administrative actions as well.... The findings and conclusions of an administrative agency may be binding upon the parties in a subsequent proceeding if the agency that rendered the decision acted in a judicial capacity and resolved disputed issues of fact which the parties had an adequate opportunity to litigate.

While there is a paucity of authority relating to the applicability of collateral estoppel with respect to property taxation, the authority that does exist holds that it does not apply to tax years other than those actually at issue in the prior proceeding. *Padgett v. Routt County Board of Equalization*, 857 P.2d 565 (Colo.App.1993); 16 E. McQuillin, *Municipal Corporations* § 44.84 (3d. rev. ed. 1994); *see also Goodwill Industries v. Los Angeles County*, 117 Cal.App.2d 19, 254 P.2d 877 (Cal.Dist.Ct.App.1953).

In *Shell Oil Co. v. Director of Revenue*, 732 S.W.2d 178 (Mo.1987), *cert. dismissed*, 485 U.S. 983, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988), the taxpayer asserted that non-mutual collateral estoppel should prevent the Director from asserting a position contrary to one acquiesced in by the Director in previous litigation with respect to the taxation of aviation fuel. The court stated:

Nonetheless, this Court must decline the requested application of estoppel.... [T]he 'incidence of taxation is determined by law' and the Director may not 'vary the force of statutes.' ... The Director's previous acts whether declining to appeal an adverse decision or whether consenting to an adverse dismissal order 'cannot bind future directors of the Department nor limit the state's right to collect taxes properly owing.' ... Sound policy suggests that estoppel should rarely be applied to a governmental entity and then only to avoid a manifest injustice.

*Shell Oil Co. v. Director of Revenue, supra*, at 182.

■ We recognize that the property tax statutes, with certain narrow exceptions, bind the assessor for the duration of the biennial reassessment cycle to the valuation established for the first year thereof. *See* § 39–1–103(15) C.R.S. (1994 Repl.Vol. 16B); *Lowe Denver Hotel Ass'n v. Arapahoe County Bd. of Equalization*, 890 P.2d 257 (Colo.App. 1995) (assessor bound by assessed valuation determined in administrative proceeding for the first tax year of the biennial reassessment cycle in the second year). *See also Weingarten v. Board of Assessment Appeals*, 876 P.2d 118 (Colo.App.1994); *Resolution Trust Corp. v. Board of County Commissioners*, 860 P.2d 1383 (Colo.App.1993).

■ In light of the above authority, we conclude that collateral estoppel does not bind the Assessor with respect to property tax exemptions except as to the tax year actually at issue in the prior administrative proceedings.

## III.

Guest Mansions next contends that the district court applied an incorrect standard in concluding that its use of the hotel was not directly related to the ordinary function of the airport. We are not persuaded.

■ There is a strong presumption against tax exemptions, *Mesa Verde Co. v. Board of County Commissioners*, 178 Colo. 49, 495 P.2d 229 (1972), *cert. dismissed*, 409 U.S. 810, 93 S.Ct. 69, 34 L.Ed.2d 65 (1972), and the burden is on the taxpayer clearly to establish the right to an exemption. *Security Life & Accident Co. v. Heckers*, 177 Colo. 455, 495 P.2d 225 (1972); *St. Mark Coptic Orthodox Church v. Colorado State Board of Assessment Appeals*, 762 P.2d 775 (Colo.App. 1988).

■ While there is evidence in the record in support of Guest Mansions' argument that its use is directly related to the ordinary function of the airport, there is also consider-

able and persuasive evidence in the record to the contrary.

The legislative history of § 39–3–135(4)(c), C.R.S. (1994 Repl.Vol. 16B) reveals that the original bill language "directly related to a *necessary* function in the operation of the airport" was changed to "directly related to the *ordinary* function of the airport." We are not persuaded that this amendment evidenced a legislative intent to include, or necessarily has the effect of including, hotels, which are for the convenience of travelers, within the exemption that preserves the exclusion.

Nor does the reference in § 39–3–135(4)(c), C.R.S. (1994 Repl.Vol. 16B) to the Public Airport Authority Act which includes "hotel facilities" in the term "Airport" mandate a conclusion that "hotel facilities" are related to the ordinary function of an airport and are tax exempt. *See* § 41–3–103(2), C.R.S. (1993 Repl.Vol. 17). The definition, which is intended to be permissive and broad, merely indicates that an airport may include hotel facilities.

## IV.

Guest Mansions also contends that the district court erred in not finding that imposition of the property tax on the hotel violates Article X, Section 4 of the Colorado Constitution. We disagree.

Article X, Section 4 of the Colorado Constitution provides:

> The property, real and personal, of the state, counties, cities, towns and other municipal corporations and public libraries, shall be exempt from taxation.

■ The obvious purpose of this section is to exempt public property from property tax. *See Denver Beechcraft, Inc. v. Board of Assessment Appeals,* 681 P.2d 945 (Colo.1984). A public airport authority, such as the one here, which has been declared by the General Assembly to be a "political subdivision" of the state, is exempt from property taxation. *See* § 41–3–102, C.R.S. (1993 Repl.Vol. 17);

*Denver Beechcraft, Inc. v. Board of Assessment Appeals, supra.*

However, taxation of a possessory interest in publicly owned property is common. Annotation, *Availability of Tax Exemption to Property Held on Lease from Exempt Owner,* 54 A.L.R.3d 402, §§ 16(b), 18(b) (1973).

Guest Mansions does not cite and we are not aware of any authority directly on point in support of its position. Implicit in Guest Mansions' argument is that the tax status of these hotel facilities is a factor which must be considered in the negotiations and ultimate terms of the lease with the Authority. If the hotel facilities are taxable, there is a benefit to the County's general fund and a concomitant reduction in the rental paid the Authority to its detriment. This offset creates an indirect tax on the Authority which is, of course, exempt from taxation. *See Maricopa County v. Fox Riverside Theatre Corp.,* 57 Ariz. 407, 114 P.2d 245 (1941); *Trimble v. City of Seattle,* 64 Wash. 102, 116 P. 647 (1911), *aff'd,* 231 U.S. 683, 34 S.Ct. 218, 58 L.Ed. 435 (1914).

Whatever the merits of this argument in the abstract, this balancing of benefits and detriments is, in our view, appropriately addressed to the General Assembly, and that body, by virtue of the above cited statutes, has made its choice.

■ The parties to this lease apparently recognized the legislative position at the outset. The lease provided that Guest Mansions will be responsible for all taxes levied upon the improvements, upon the leasehold interest, or which may become a lien on the real property. Therefore, to the extent taxation of the improvements or leasehold interest may reduce revenues to the Authority, that eventuality has already been considered and is presumably reflected in the rental. Guest Mansions wants it both ways. We conclude that the statute permitting taxation of a possessory interest in tax exempt property is

not unconstitutional as a violation of Article X, Section 4 of the Colorado Constitution.

## V.

Guest Mansions further contends that the district court erred in finding that Guest Mansions owns the improvements comprising the hotel. We need not address this contention as we conclude that the district court properly determined that the hotel was subject to taxation under the Possessory Interest Statute.

Judgment affirmed.

PLANK and HUME, JJ., concur.