PILGRIM REST BAPTIST CHURCH, INC., Petitioner–Appellee,

and

Board of Assessment Appeals, Appellee,

v.

PROPERTY TAX ADMINISTRATOR, Mary Huddleston, Respondent–Appellant.

No. 97CA1425.

Colorado Court of Appeals, Div. IV.

April 30, 1998.

As Modified on Denial of Rehearing June 25, 1998.

Certiorari Denied Feb. 16, 1999.

James Bretz, Denver, Colorado, for Petitioner–Appellee

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Eugene C. Cavaliere, Senior Assistant Attorney General, Denver, Colorado, for Appellee

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, James E. Heiser, Assistant Attorney General, Denver, Colorado, for Respondent–Appellant

Opinion by Judge NEY.

In this property tax case, respondent, the Property Tax Administrator (PTA), appeals from an order of the Board of Assessment Appeals (BAA) which overturned a ruling of the PTA and granted a religious use property tax exemption to petitioner, Pilgrim Rest Baptist Church, Inc. (church), as to two vacant parcels of real property owned by the church for the 1993, 1994, 1995, and 1996 tax years. We affirm.

The relevant facts are not in dispute. The subject property consists of two vacant lots owned by the church, one in Denver, near the church, and the other in Park County, near Fairplay.

The evidence at the hearing before the BAA established that the church was the only user of the lots and that it used each of the subject lots essentially one day each year

for certain outdoor activities which it claimed were in furtherance of its religious mission and purposes. The church expressed hope to improve the lots in the future as funds might permit. The PTA conceded that the church actually used the subject lots at least once a year, but asserted that such use was insufficient for exemption and that more "continual" or "regular" use was required.

Following the hearing, the BAA ruled that the church had presented sufficient evidence of religious use to show that the subject lots should be exempt from property taxation for the 1993 to 1996 tax years at issue. Specifically, the BAA ruled that the evidence presented showed that the church actually used the properties "on a limited basis" and was "the only user" of the properties, and that the "limited funding" available to the church to improve the properties should not "keep the properties from being tax exempt." This appeal by the PTA followed.

I.

In this appeal, PTA attempts to challenge the exemption ordered by the BAA on the basis that the character of the church's use of the subject lots was secular rather than religious. However, judicial review of administrative agency action is limited to the record made before the agency. *Hancock v. State,* 758 P.2d 1372 (Colo.1988). And, since the PTA failed to raise any issues concerning the allegedly non-religious, secular character of the church's use of the subject lots in the proceedings before the BAA, we will not consider such arguments now for the first time on appeal. *See Hancock v. State, supra; Wyler/Pebble Creek Ranch v. Colorado Board of Assessment Appeals,* 883 P.2d 597 (Colo.App.1994).

II.

We reject the PTA's challenge to the exemption ordered by the BAA based on its argument that the quantity and extent of the church's use of the subject lots was insufficient as a matter of law.

Initially, we note that the ultimate determination as to whether the subject lots qualified for a property tax exemption based

on the church's use of them involves mixed issues of law and fact. Thus, under the applicable standard of review, the BAA's exemption determination must be sustained if it has a reasonable basis in law and is supported by substantial evidence in the record as a whole. *See* §§ 24–4–106(7) & 24–4–106(11)(e), C.R.S.1997; *Board of Assessment Appeals v. AM/FM International,* 940 P.2d 338 (Colo.1997).

Section 39–3–106(1), C.R.S.1997, as in effect since the 1989 amendments to the pertinent statutory scheme, provides for a property tax exemption as to property "which is owned and used solely and exclusively for religious purposes." *See also* Colo. Const. art. X, § 5 (similarly providing for property tax exemption as to property "used solely and exclusively for religious worship," among other things, "unless otherwise provided by general law").

Under these provisions, the test for exemption depends upon the character of the use to which the property is put. *See Maurer v. Young Life,* 779 P.2d 1317 (Colo.1989); *St. Mark Coptic Orthodox Church v. Colorado State Board of Assessment Appeals,* 762 P.2d 775 (Colo.App.1988).

Further, property tax exemptions based on religious use should not be narrowly construed, and each claim for tax exemption must be resolved on the basis of its own facts under the applicable legal standards. *See Maurer v. Young Life, supra; see also Board of Assessment Appeals v. AM/FM International, supra.*

We note that property tax exemptions are determined on an annual basis under the property tax scheme, based on the use of the property in each tax year. *See* § 39–2–117(3), C.R.S.1997; *St. Mark Coptic Orthodox Church v. Colorado State Board of Assessment Appeals, supra.* Implicit in this scheme is a requirement that, in order for that property to qualify for tax exemption for that tax year, there be at least some actual use of the property for tax exempt purposes in that tax year.

Apart from this minimal implicit requirement, however, we decline to hold, as a

matter of law, that any particular frequency or quantity of use religious in character is required to satisfy the foregoing constitutional and statutory standards for an exemption based on religious use. *See Horton v. Fountain Valley School,* 98 Colo. 480, 485, 56 P.2d 933, 936 (1936) (overturning denial of property tax exemption for outlying acreage of nonprofit school, rejecting contention of taxing authorities that use of such acreage was "insignificant" and stating that it was "not for [the taxing authorities] to measure a use"); *Gyurman v. Weld County Board of Equalization,* 851 P.2d 307 (Colo.App.1993) (no prescribed limit on amount of acreage qualifying for residential classification based on its use as part of taxpayer's residence under applicable constitutional and statutory standards).

Here, although the PTA's witness testified that the church's use of the subject lots for religious purposes once each year was "not sufficient" for an exemption, this witness, on cross-examination, was also unable to quantify the frequency or amount of such use that would be considered to be sufficient by the PTA to qualify for such an exemption. It was undisputed that the church had actually used each of the subject lots at least once each year.

 There was testimony in the record that the PTA had told the church that once a year usage would satisfy the usage requirement. Also, evidence showed the church had limited funds to improve the properties. Under these circumstances, we decline to set aside the BAA's determination that use of a property for religious purposes once during a twelve month period constitutes sufficient use to qualify under an exemption under §39-3-66(1).

Therefore, the BAA's determination that the subject lots should be exempt from property taxation based on such limited religious use is fully supported by the evidentiary record.

Finally, we view the PTA's reliance on *First Christian Church v. Board of Assessment Appeals,* 711 P.2d 721 (Colo.App.1985), in support of a contrary result to be misplaced.

In that case, a division of this court upheld the BAA's denial of a religious use property tax exemption as to certain vacant land owned by a church. However, that case is both factually and legally distinguishable from the situation here in that there it was undisputed that the land was not then being used for any religious purposes. Also, that case was decided under the significantly more restrictive provisions of the former statutory scheme, which are no longer in effect.

The BAA's order is affirmed.

RULAND and VOGT, JJ., concur.